UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA    :

                    :       04 Cr. 00530 (LAP)

        -against-      :

                    :

ENRIQUE CARLOS MORA,      :       OPINION AND ORDER

    a/k/a "Carlos Jordan,"  :

    a/k/a "Carlos Lasalle,"  :

                    :

         Defendant.     :

                    :

------------------------------x

LORETTA A. PRESKA, United States District Judge:

       Defendant Enrique Carlos Mora moves pursuant to
the Speedy Trial Act, 18 U.S.C. §§ 3161 and 3162, for an order
dismissing the indictment against him with prejudice. The
instant dispute arises from the application of two provisions of
§ 3161(h)(1) that relate to the time that may be excluded
following submission of a pretrial motion. Defendant argues that
the Speedy Trial Act was violated because only 30 days were
excludable pursuant to § 3161(h)(1)(J) following full briefing of
his pretrial motion. The Government contends that the entire
period following the filing of the motion is excludable pursuant
to § 3161(h)(1)(F). For the reasons set forth below, Defendant's
motion is granted in part and denied in part.

## BACKGROUND

On May 19, 2004, Enrique Carlos Mora ("Mora" or "Defendant") appeared before Magistrate Judge James C. Francis following his arrest. On June 3, 2004, a grand jury returned an indictment charging Mora with one count of receiving and distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B) and one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Mora was arraigned on the indictment on June 16, 2004. At the arraignment, time was excluded from calculation under the Speedy Trial Act until June 28, the date set for the first pretrial conference. Thus, 13 days passed on the Speedy Trial Act clock between the issuance of the indictment and arraignment. At the June 28 conference, time was excluded until August 9, the date for the next status conference. On August 9, a status conference was held at which time was excluded until September 22, the date set for the next pretrial conference. The September 22 conference never occurred. On October 6, the conference previously scheduled for September 22 was rescheduled for November 4, and time between October 6 and November 4 was excluded from calculation under the Speedy Trial Act. Consequently, an additional 14 non-excludable days elapsed between September 22 and October 6.

During the November 4 conference, counsel for Defendant indicated to the Court his intention to file "either one or two"

motions. Govt. Opp. Memo., Ex. A.[1]  The parties agreed to the

following briefing schedule: Defendant would file his motion(s)

on or before December 10; the Government would submit its

opposition brief on or before December 27; Defendant would submit

his reply, if any, by January 3, 2005. Govt. Opp. Memo., Ex. A.

Counsel for Defendant indicated to the Court that one of his

potential motions may require a hearing; the other would not.

Govt. Opp. Memo., Ex. A.  Both counsel agreed to contact the

Court for a hearing or oral argument.  At the conclusion of the

conference, time was excluded from November 4 through December 10

in the interest of justice to allow defense counsel to prepare

his pretrial motion(s).

On December 9, counsel for Defendant submitted a letter

requesting that the deadline for filing motions be extended to

December 17 and that the Government be given until January 3 to

respond.[2]  The request was granted and time was excluded until

December 17.[3]

---

[1]"Govt. Opp. Memo." refers to the Government's letter in opposition to Defendant's motion to dismiss the indictment filed on April 29, 2005 [Docket No. 17].

[2]Although the letter did not explicitly request an extension of the deadline for Defendant's reply brief, if any, the January 3 deadline set at the November 4 conference was extended in accordance with the other deadlines to January 10.

[3]The memo-endorsed letter from Mr. Statsinger does not appear on the Docket Report but is attached as Exhibit B to the Government's opposition to Defendant's Speedy Trial Act motion.

Defendant moved to suppress physical evidence on December 17. The Government submitted its brief in opposition to Defendant's motion on January 3, 2005. Defendant did not file a reply brief. Neither party requested a hearing in their briefs, nor did either party contact chambers with such a request.

On April 18, 2005, Defendant moved to dismiss the indictment, alleging that 108 non-excludable days had elapsed since the issuance of the indictment. The Government submitted its opposition on April 29, contending that only 27 non-excludable days had elapsed and, therefore, that the indictment should not be dismissed.

## DISCUSSION

I. The Speedy Trial Act

The Speedy Trial Act requires that a defendant be tried within 70 days of "the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Certain periods of delay are excludable from this calculation under § 3161(h). Relevant to the instant motion are § 3161(h)(1)(F) ("Subsection (F)") and § 3161(h)(1)(J) ("Subsection (J)").

Subsection (F) excludes "delay resulting from any

pretrial motion, from the filing of the motion through the

conclusion of the hearing on, or other prompt disposition of,

such motion." 18 U.S.C. § 3161(h)(1)(F). Subsection (J) excludes

"delay reasonably attributable to any period, not to exceed

thirty days, during which any proceeding concerning the defendant

is actually under advisement by the court." 18 U.S.C.

§ 3161(h)(1)(J). The question raised by this case is the extent

to which Subsection (J) limits the time that should be excluded

from calculation under the Speedy Trial Act following the filing

of a pretrial motion for which a hearing is never held.

The Court of Appeals addressed this question in United

States v. Bufalino, 683 F.2d 639 (2d Cir. 1982).[4] There, the

Court considered facts similar to those of the instant case.[5]

The Government argued to the Court that Subsections (F) and (J)

---

[4]Confusion about whether Subsection (J) applies to pretrial
motions is prevalent. The source of the confusion could be the
misreading of Speedy Trial Act decisions that contain broad
language meant, in the decisions, to be read within the context
of motions requiring hearings and, therefore, invoking the
application of only Subsection (F). See, e.g., United States v.
Gambino, 59 F.3d 353, 359 (2d Cir. 1995) ("[A]ll the time
consumed in deciding the motion is attributable to the
defendant."); United States v. Simmons, 812 F.2d 818, 819 (2d
Cir. 1987) ("In Henderson v. United States, supra, the Supreme
Court held that the Speedy Trial Act does not restrict the length
of time for processing pretrial motions.") (citing Henderson v.
United States, 476 U.S. 321, 329 (1986)).

[5]The outcome of Bufalino differs from that of the instant
case because Bufalino never responded to the Government's
sequestration motion, resulting in the trial judge never having
the motion "under advisement." 683 F.2d at 646.

should not be read together because Subsection (J), which imposes the 30-day limit on proceedings under advisement by the court, refers to proceedings other than those related to pretrial motion practice. Id. at 642.  In response, the Court observed that while "a cursory reading of the two subsections lends some support to the government's position, a careful look at the legislative history of the Speedy Trial Act and its 1979 amendments makes that theory untenable." Id.  After extensively citing the relevant House and Senate reports, the Court of Appeals concluded that the legislative history "make[s] it clear to us that the term 'proceeding' in subsection (J) was very much intended to encompass pretrial motions." Id. at 643.[6]

In so holding, the Court found that should "the 30-day

---

[6]This view is supported by guidelines promulgated close in time to the enactment of the Speedy Trial Act.  The portion pertaining to Subsection (J) reads, in part:
> Although the excludable period under this subparagraph is limited to thirty days, additional time required to consider a motion may in some cases warrant a continuance of the trial date under paragraph (h)(8) . . . The starting date is the day following the date on which the court has received everything it expects from the parties . . . The ending date is the earliest of (1) the date the judge's decision is filed, (2) the date the judge renders his decision orally in open court, or (3) the expiration of the 30-day maximum period.

The Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, Guidelines to the Administration of the Speedy Trial Act of 1974, as Amended, 45-46 (Dec. 1979 with amendments through Oct. 1984) (also explaining in the portion pertaining to Subsection (F) that after "all anticipated briefs have been filed and any necessary hearing has been completed . . . the matter should be treated as 'under advisement,' and subject to the rules of subparagraph (J).").

limit place an unduly harsh burden on a trial judge, it is always

open to him to find that the interest of justice is best served

by granting a continuance under § 3161(h)(8) for the excess

period." Id.

Four years later, the Supreme Court observed that

"Subsection (F) excludes time in two situations.  The first

arises when a pretrial motion requires a hearing . . . [t]he

second situation concerns motions that require no hearing and

that result in 'prompt disposition.'" Henderson, 476 U.S. at 329.

For those motions requiring a hearing, subsection (F) excludes

the entire period between the filing of the motion and the

conclusion of the hearing.[7] Id.  The Court held that for motions

that do not require a hearing, "the 'point at which time will

cease to be excluded' is identified by [S]ubsection (J), which

permits an exclusion of 30 days from the time a motion is

actually 'under advisement' by the court." Id. (quoting S. Rep.

No. 96-212, at 34 (1979)).  This rule captures the express intent

of the Senate Committee on the Judiciary, which stated:

> 'In using the words 'prompt disposition', the
> committee intends to make it clear that, in
> excluding time between the filing and
> disposition on the papers, the Committee does
> not intend to permit circumvention of the 30-
> days, 'under advisement' provision contained
> in Subsection (h)(1)(J).

---

[7]Henderson is widely recognized for the proposition that the
time between the filing of a pretrial motion and the hearing
thereon need not be reasonable. Henderson, 476 U.S. at 329.

<u>Id.</u> The Supreme Court and the Court of Appeals have thus made clear that pretrial motions not requiring a hearing should be decided within 30 days of a court having taken such motion under advisement.[8] Two questions naturally follow: (1) when does a motion require a hearing; and (2) when is a motion deemed to be taken under advisement?

Nothing in the Speedy Trial Act or federal precedent requires a trial court to make an on-the-record determination that a motion does or does not require a hearing. <u>See</u> <u>United States v. Maxwell</u>, 351 F.3d 35, 39 (1st Cir. 2003). Instead, "the crucial question concerning the exclusions provided by Subsection (F) and Subsection (J) "is whether the court actually holds a hearing on a motion." <u>United States v. Grosz</u>, 76 F.3d 1318, 1325 (5th Cir. 1996). In this context, a hearing consists of "any on-the-record colloquy in which the district court hears the arguments of counsel and considers those arguments prior to deciding a pending motion." <u>United States v. Staula</u>, 80 F.3d 596, 602 (1st Cir. 1996). This definition of "hearing" is consistent with Congress' intent that Subsection (F) encompass all pretrial motions and exclude the time consumed in placing a

---

[8] Although not relevant to the instant motion, in addition, "Subsection (F) excludes time after a hearing has been held where a district court awaits additional filings from the parties that are needed for proper disposition of the motion." <u>Henderson</u>, 476 U.S. at 331.

court in a position to decide such motions. See Grosz, 76 F.3d
at 1324-25 (citing Henderson, 476 U.S. at 331).

Turning to the second issue that must be addressed to
effectively calculate time under Subsection (J), a motion is
deemed to have been taken under advisement when "the court
receives all the papers it reasonably expects." Henderson,
476 U.S. at 329; see also United States v. Pagan, 714 F.2d 225,
226-27 (2d Cir. 1983) (although trial judge was not compelled to
find that motion was taken under advisement as of the date the
Government's response was due, judge did not commit error in so
finding); United States v. Oberoi, 295 F. Supp. 2d 286, 300
(W.D.N.Y. 2003) (finding motion to have been taken under
advisement as of the date of the hearing thereon); United States
v. Cruz, 907 F. Supp. 87, 90 (S.D.N.Y. 1995) (motion for a
hearing under advisement once answered by the government). As
discussed in note 6, supra, performing the calculation in this
manner is consistent with the guidelines prepared by the Judicial
Council Speedy Trial Act Coordinating Committee. Judicial Council
Speedy Trial Act Coordinating Committee, Guidelines Under the
Speedy Trial Act (1979), reprinted in The Speedy Trial Act
Amendments of 1979: Hearings on S. 961 and S. 1028 Before the
Senate Comm. on the Judiciary, 96th Cong., 1st Sess. 386, 398-99
(stating that the time excluded when a motion is pending for
which there is no oral argument ends on "the due date of the

reply papers."). Although these guidelines "do not have the
force of law, they are entitled to appropriate respect."
<u>United States v. Todisco</u>, 667 F.2d 255, 260 (2d Cir. 1981).


   B.   Application

   Applying the holdings of <u>Henderson</u> and <u>Bufalino</u> to the
instant facts leads to the conclusion that the above-referenced
indictment must be dismissed.  The entire period between the
filing of Mora's suppression motion and the filing of the instant
motion is not excludable under Subsection (F) because a hearing
was never held on the motion.

   The Government's argument that the parties and the
Court contemplated a hearing or oral argument is unpersuasive in
view of the facts.  Looking back at defense counsel's statement
at the November 4 conference, it is clear that the suppression
motion is the motion he anticipated "would probably not require
an evidentiary hearing." Govt. Opp., Ex. A.  Neither party
requested such a hearing and, having reviewed the suppression
motion, there is no independent basis for such a hearing.  I
decline, and the Government should decline, to hold a hearing
simply to avoid dismissal of an indictment for violation of the
Speedy Trial Act. <u>See</u> <u>Grosz</u>, 76 F.3d at 1325 n.7 ("[W]e will not
permit either the district court or the prosecution to
jerry-build a 'hearing' in order to thwart the concinnous

10

operation of the Speedy Trial Act."); Staula, 80 F.3d at 602 n.3

("We acknowledge that we would not recognize the exchange as a

'hearing' if the record demonstrated an attempt on the part of

the district court or the government to manufacture a 'hearing'

to avoid the operation of the Speedy Trial Act.").

For calculation purposes, the suppression motion should

be deemed to have been "under advisement" as of January 11, the

date following the deadline for Defendant's reply brief.

Although Defendant never submitted a reply brief, he had until

January 10 to do so.  When January 10 passed without the filing

of a brief in reply to the Government's opposition, neither the

Court nor the Government could "reasonably expect" to receive

additional submissions on the motion.[9] Henderson, 476 U.S.

at 329.  Accordingly, the motion must be deemed to have been

_____

[9]Deeming a motion "under advisement" as of the date
following the last scheduled submission to the court raises
practical concerns.  For example, should a court review the fully
briefed motion and decide on day 20 of the 30-day advisement
period that additional briefing is required, would the 30-day
advisement period begin anew upon such submission?  If so, one of
the parties could sua sponte submit supplemental briefs for the
purpose of restarting the 30-day advisement period indefinitely.
In addition, it appears that a court may be required to schedule
a hearing on a pretrial motion previously submitted on the papers
within the 30-day advisement or within the 70-day indictment-to-
trial period to avoid allegations of "jerry-building" as
discussed above.  Such a rule likely comports with the intent of
the Speedy Trial Act, but should be considered throughout the
scheduling process.  These concerns need not be fully explored in
this Opinion and Order, but are raised as potential
considerations to be made in the course of disposing of pretrial
criminal motions in a manner consistent with the Speedy Trial
Act.

"under advisement" as of January 11. Because the motion was not decided within 30 days and no other exclusions were made pursuant to § 3161(h), the Speedy Trial Act clock restarted on February 11. Between February 11 and April 18, 65 non-excludable days elapsed. Thus, a total of 92 non-excludable days passed after the filing and making public of the indictment, thereby violating § 3161(c) of the Speedy Trial Act. The indictment against Defendant must, therefore, be dismissed pursuant to § 3162(a)(2).

## II.   Dismissal of the Indictment

### A.   The Standard

Having found that the indictment against Mora must be dismissed for violation of the Speedy Trial Act, I must decide whether to dismiss it with or without prejudice. There is no presumption of dismissal with prejudice in this Circuit. See United States v. Caparella, 716 F.2d 976, 980 (2d Cir. 1983). Instead, the determination of whether the dismissal should be with or without prejudice to reprosecution must be based on: "(1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; [] (3) the impact of a reprosecution on the administration of this chapter and on the administration of justice," 18 U.S.C. § 3161(a)(2), and (4) the prejudice to Defendant. See United States v. Taylor, 487 U.S. 326, 334 (1988) ("[T]here is little doubt that Congress

12

intended this factor to be relevant for a district court's
consideration.").


B.    Application

With respect to the seriousness of the offense charged,
I decline to hold that distributing, receiving, and possessing
child pornography are not serious crimes.  Defense counsel argues
that in relation to the gravity of other offenses involving the
sexual exploitation of children, Defendant's conduct is
relatively benign.  To support this position, counsel points out
that there is no evidence showing that Defendant paid for the
images he allegedly possessed or that he directly encouraged
anyone to produce such materials.

However, child pornography web sites that allow viewers
to download images at no charge make money from advertisements in
addition to subscriptions. See 61 Am. Jur. Proof of Facts 3d 51.
Such advertising revenue surely depends, in part, on the traffic
a given website receives.  It is possible that defense counsel's
argument would have more persuasive weight had Defendant been in
possession of a book or magazine published in the distant past.
Instead, Defendant is accused of engaging in conduct that
actively fuels the growth of an already flourishing internet
child pornography trade. See United States v. Holston, 343 F.3d
83, 85 (2d Cir. 2003) ("Congress also found that 'because of the

vast potential profits in child pornography' . . . the [child pornography] industry was 'growing at a very rapid rate.'") (quoting S. Rep. 95-438, at 5 (1977), reprinted in 1978 U.S.C.C.A.N. 40, 42-43). "The distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled." New York v. Ferber, 458 U.S. 747, 759 (1982). Moreover, the effect of the child pornography trade on its victims cannot be minimized; the continued existence of the materials "causes the child victims continuing harm by haunting the children in years to come." Osborne v. Ohio, 495 U.S. 103, 111 (citing Ferber, 458 U.S. at 759). For these reasons, the offense charged is sufficiently serious to support dismissal without prejudice.

The second factor, a consideration of the facts and circumstances that led to dismissal of the indictment, does not favor dismissal with prejudice. "[I]n the absence of a factually supported finding of bad faith or a pattern of neglect by the local United States Attorney," an isolated inadvertent violation of the Speedy Trial Act "cannot support a decision to dismiss with prejudice." United States v. Hernandez, 863 F.2d 239, 244 (2d Cir. 1988). Considering that the Government's inaction was based on the incorrect belief that the pendency of any pretrial motion stopped the running of the Speedy Trial Act clock, I do

14

not find that the delay was the result of bad faith on the part
of the Assistant U.S. Attorney or a pattern of neglect in the
U.S. Attorney's Office in this District.  To the contrary, the
dearth of similar Speedy Trial Act cases in this District
supports the opposite conclusion.

Turning to the effect of a dismissal with or without
prejudice on the administration of justice, I note that this
factor is closely aligned with the facts that led to dismissal;
the more egregious the Government's role in the violation and the
more severe the delay, the more dismissal with prejudice is
warranted. See Taylor, 487 U.S. at 342; United States v. Wilson,
11 F.3d 346, 352 (2d Cir. 1993) (holding that a court may
properly consider the length and cause of delay in determining
whether dismissal with prejudice will best serve the
administration of justice).  Defendant argues that dismissal
without prejudice would reward the Government for its neglect by
restarting the Speedy Trial Act clock.  However, "[d]ismissal
without prejudice is not a toothless sanction: it forces the
Government to obtain a new indictment if it decides to
reprosecute, and it exposes the prosecution to dismissal on
statute of limitations grounds." Taylor, 487 U.S. at 342.
Although "[f]orcing the government to reindict a defendant after
a Speedy Trial Act violation may seem a 'purposeless formalism,'
. . . it is the sanction Congress saw fit to impose." Gambino,

15

59 F.3d at 363 (internal citation omitted). Considering that the Government did not act with bad faith or engage in a pattern of disregard for the limitations of the Speedy Trial Act, I do not find that dismissal with prejudice would further the administration of justice.

The final factor to be considered is the prejudice to Defendant. See Taylor, 487 U.S. at 334. The delay in this case has visited no appreciable prejudice on Mora's defense. The evidence is largely physical, and Defendant has not identified defense witnesses whose testimony may have been prejudiced by the delay. For this factor to weigh in favor of dismissal with prejudice, Defendant would have to make a showing of prejudice beyond the ongoing uncertainty inherent in facing pending criminal charges. Accordingly, the prejudice that has befallen Defendant as a result of the violation of the Speedy Trial Act is minimal and does not warrant dismissal with prejudice.

Having considered the factors set forth in § 3161(a)(2) and United States v. Taylor, the indictment against Defendant is dismissed without prejudice to reprosecution.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the indictment against Defendant, 04 Cr. 00530, is dismissed without prejudice.


SO ORDERED

June 7, 2005

*[signature]*
LORETTA A. PRESKA, U.S.D.J.